THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELEPHANT JUSTICE PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>WOODLAND PARK ZOOLOGICAL SOCIETY, INC., and OKLAHOMA CITY ZOOLOGICAL TRUST,<br><br>Defendants. | CASE NO. C15-0451-JCC<br><br>ORDER DENYING TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Plaintiff's motion for a temporary restraining order (Dkt. No. 36). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

I. BACKGROUND

This case is a citizen suit brought to enforce Section 9 of the Endangered Species Act ("ESA"). Plaintiff Elephant Justice Project ("EJP") seeks a temporary restraining order preventing the transport of two endangered Asian elephants (Chai and Bamboo) to the Oklahoma City Zoo. A detailed discussion of the background of this case can be found in the Court's Order denying Plaintiff's initial motion for a preliminary injunction (Dkt. No. 28). In that Order, the Court found that EJP is likely to succeed on its claim that the transfer of the elephants from the

Woodland Park Zoological Society ("WPZS") in Seattle to the Oklahoma City Zoological Trust ("OKCT") is in the course of "commercial activity" and that it is therefore prohibited in the absence of a permit. The Court also found, however, that EJP did not demonstrate that irreparable injury was likely in the absence of an injunction.

Shortly after the Ninth Circuit Court of Appeals denied EJP's emergency motion for a stay pending appeal of this Court's order, Defendants commenced transporting Chai and Bamboo to Oklahoma. The elephants' journey was cut short when a serious storm forced their transport team to reroute their journey, and, eventually, to seek safe harbor at the San Diego Zoo, where Chai and Bamboo are currently receiving care at a specialized facility for ailing and geriatric elephants. (Ex.1, Dkt. 41 at 6.) EJP now argues that the planned transport from San Diego to the Oklahoma City Zoo ("OKCZ") will further endanger Chai and Bamboo. (Dkt. No. 36 at 3.)

## II.  DISCUSSION

### A.  Temporary Restraining Order Standard

The standard for temporary restraining orders is substantially identical to that for preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th Cir. 2001). Ordinarily, a court seeking to determine whether to grant a preliminary injunction considers (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to that party if an injunction is not issued; (3) the extent to which the balance of hardships favors the moving party; and (4) whether the public interest will be advanced by the injunction. *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). However, this traditional analysis "does not apply to injunctions issued pursuant to the ESA." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793 (9th Cir. 2005) (citation omitted). Instead, in cases involving the ESA, Congress has "removed from the courts their traditional equitable discretion in injunction proceedings of balancing the parties' competing

interests." *Id*. at 793-94 (citation and internal quotation marks omitted). In such cases "'Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities.'" *Id*. at 794 (quoting *TVA v. Hill*, 437 U.S. 153, 194 (1978)).

Thus, where violations of the ESA are involved, only the first two prongs of the traditional preliminary injunction analysis are at issue. First, plaintiffs must "show either a likelihood of success on the merits, or alternatively, the existence of 'substantial questions' regarding the merits." *Audubon Soc. of Portland v. Nat'l Marine Fisheries Serv*., 849 F. Supp. 2d 1017, 1033 (D. Or. 2011). Next, plaintiffs must demonstrate that "irreparable injury is *likely* in the absence of an injunction." *Native Ecosystems Council v. Krueger*, No. CV 14-196-M-DLC, 2014 WL 4215358 (D. Mont. Aug. 27, 2014) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)) (emphasis in original).

### B. Likelihood of Success on the Merits

This Court has already determined that EJP is likely to prevail in its argument that the transport of Chai and Bamboo requires a permit under 16 U.S.C. § 1539 of the ESA. (Dkt. No. 28 at 7.) There is therefore no need to consider whether EJP is also likely to prevail in its argument that the Defendants have violated or will violate the ESA's "take" prohibition. (*See* Dkt. No. 36 at 13.)

### C. Likelihood of Irreparable Injury

*1. Injury to Chai and Bamboo*

Harm to either Chai or Bamboo would constitute irreparable injury. *See Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e*., irreparable.") An injunction is appropriate if harm to the animals is "sufficiently *likely*," meaning that there is a "definitive threat" that is more than "mere speculation." *Burlington N. R.R., Inc.*, 23 F.3d at 1511-12 n.8 (emphasis in original).

The Court previously found that EJP was unable to demonstrate that injury to Chai and/or Bamboo during transit to the OKC Zoo was likely in the absence of an injunction. EJP argues that circumstances have changed such that this conclusion is no longer warranted. Specifically, EJP argues that: Bamboo suffered from a "life-threatening" condition during the "botched" transport from Seattle to San Diego and that the trip provides new reason for concern that both elephants are likely to suffer additional harm should the transit to Oklahoma City resume (Dkt. No. 36 at 17, 20); that expected high temperatures en route between San Diego and Oklahoma City present an additional threat to the elephants' health and well-being (*Id*.); and that there is now evidence indicating that "the hard substrates in the [OKCZ] elephant exhibit will advance [the elephants'] existing muscoskeletal disease" if the transport to Oklahoma City is carried out. (*Id*. at 21.) For the following reasons, the Court finds EJP's arguments about these issues unpersuasive.

*2. Bamboo's Condition During the Transport to San Diego*

EJP has provided a declaration indicating that Bamboo may have suffered from colic and that she stopped eating, drinking, and defecating, and tried to lie down in her crate while in transit to San Diego. (*Krebs Decl*., Dkt. No. 39 at 1-2.) The declaration, from a Seattle resident named Judith Krebs, is not based on firsthand knowledge, but on a conversation "with an elephant keeper in a San Diego Zoo uniform named Lori" whose last name is unknown to Ms. Krebs. (*Id*.) EJP has also provided a declaration from a veterinarian with significant experience in elephant health and welfare indicating that "when an elephant confined in a crate during transport assumes a sterna recumbent position, i.e., from abdominal discomfort or fatigue, that position can quickly result in death." (*Ensley Decl*., Dkt. No. 38 at 5.)

These declarations contain no first-hand knowledge about Chai or Bamboo, and would likely be inadmissible at trial. That does not preclude the Court from considering them at this stage of the proceedings. *See Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981) ("a preliminary injunction is customarily granted on the basis of procedures that are less formal and

evidence that is less complete than in a trial on the merits."); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."). However, Defendants have proffered evidence sufficient to allay any concern prompted by these declarations.

      Dr. Kelly Helmick has served as an attending veterinarian to Chai and Bamboo for ten years. She was present when the elephants were loaded and she monitored the elephants and conducted welfare checks throughout the transport. She also supervised the uncrating of the elephants in San Diego and continued to monitor their health over the next 48 hours. (*Helmick Decl.*, Dkt. No 49 at 3). EJP has provided a declaration by Dr. Helmick in which she stated that "[n]o cramping or 'colic' was observed before, during, or following transport for either" Bamboo or Chai. (*Helmick Decl.*, Dkt. No 49 at 5.) Dr. Helmick has also provided assurances that neither elephant lay down or assumed a "sterna recumbent position" at any time during transit. (*Id.*) This position is reinforced by a declaration from Dr. James Ooosterhuis, who was also part of the elephant convoy. (*Oosterhuis Decl.*, Dkt. No. 46 at 3.) Martin Ramirez, an Animal Curator at WPZS who coordinated the transport, has also provided a declaration in which he discusses the Bamboo's behavior during transit. (*Ramirez Decl.*, Dkt. No 47 at 5.) Mr. Ramirez notes Bamboo displayed "behaviors indicating restlessness, such as leaning and stretching," during the trip. (*Id.*) These behaviors prompted the transport team to reevaluate Bamboo's condition and to take other precautionary measures, including cutting the trip short and transporting the elephants to the San Diego Zoo (SDZ) rather than to Oklahoma. (*Id.*) Mr. Ramirez does not, however, discuss colic or raise any other serious health concerns. Instead, he says that, when the elephants arrived in San Diego, they walked out of their crates without incident, and "within minutes both animals had been evaluated by WPZS and SDZ vets and appeared in good condition." (*Id.*)

It may be true that all of the declarations provided by Defendants come from interested parties. However, these are interested parties who have years or decades of experience caring for Chai and Bamboo, and who have first-hand knowledge of the elephants' treatment and condition during transport. The strongest evidence that can be weighed against these declarations is a second-hand declaration based on one conversation with an only partially-named (and thus, effectively anonymous) zoo caretaker. Under the circumstances, the Court simply cannot find credible the allegations of Bamboo's suffering during transport.

*2. Planned Transport from San Diego to Oklahoma City*

EJP argues that the transport from San Diego to Oklahoma City will be especially dangerous for Chai and Bamboo because the animals will have to pass through Phoenix, Arizona, "where forecast temperatures range up to 96 degrees, and average temperatures for May and June reach 95 and 104 degrees, respectively – well above the accepted range for elephant health and comfort." (Dkt. No. 36 at 10.) Dr. Ensley's declaration provides additional cause for alarm, as it states that "an elephant's body heat alone will warm up in a confined space with inadequate ventilation such as in a transport crate, or a transport vehicle, even those with ventilation, to such an extent that the entire interior surface of the transport trailer becomes wet with moisture condensation. At a minimum, it is highly likely that Bamboo and Chai will suffer discomfort if ambient outside temperatures reach 100 F and higher, as is predicted for the Phoenix, Arizona in the near future, and the elephants are in metal crates without air conditioning." (*Ensley Decl.*, Dkt. No. 38 at 5.)

These concerns are well-taken, but the Court finds Defendants have provided adequate reassurance that the transport team has sufficiently prepared for the high temperatures they are likely to come across.  The elephants will be transported in separate ventilated crates equipped with evaporative cooler units, so Dr. Ensley's warnings about the risk of travelling in crates without cooling apparatuses are inapposite. (Dkt. No. 47 at 6.) The transport will also be timed so that the convoy passes through the warmest areas at night, so as to minimize exposure to high

temperatures. (*Id*.) Given the precautions taken by the transport team, the Court does not find that the expected Arizona temperatures make injury to Chai and Bamboo likely.

*3. The Elephants' Likely Fate at the Oklahoma Zoo*

EJP argues that "[i]f Bamboo and Chai are sent to OKCZ, the hard substrates in the elephant exhibit will advance their existing musculoskeletal disease . . . [and] [w]orsening of an endangered species' painful disease is an irreparable harm that warrants an injunction [or a temporary restraining order]." (Dkt. 36 at 21.) In support of this proposition, EJP relies on Dr. Ensley's declaration. Setting aside the (contested) question of whether the elephants actually have any musculoskeletal disease, the Court finds this argument unavailing because the substrates that Dr. Ensley is concerned with are, apparently, present in zoo exhibits in general. (*Ensley Decl*., Dkt. No. 38 at 6.) This presumably includes the San Diego Zoo. Dr. Ensley says that the troublesome substrates are not present at the elephant sanctuaries, but this is an irrelevant consideration, given that the issue facing the Court is whether the transport from the San Diego Zoo to the Oklahoma City Zoo will cause harm.[1] Because the grounds of both zoos presumably contain the same or similar substrates, there is no basis for concluding that transport from one facility to the other will have any significance in this regard.

EJP also takes issue with one of the most powerful arguments advanced by Defendants in favor of relocating Chai and Bamboo to the Oklahoma City Zoo, which is that the WPZS has determined that it is crucially important to integrate the elephants into a multi-generational herd.

---

[1] The question of whether it might eventually order the elephants to be transported to an elephant sanctuary is not currently before the Court. Nevertheless, it once again bears noting that there is no evidence indicating that an appropriate sanctuary is available for Chai and Bamboo. The PAWS sanctuary in Northern California has offered to "commit to provide permanent sanctuary and lifetime care" for the elephants, and claims to have "an existing elephant barn" that could accommodate them. (*Stewart Decl*., Dkt. No. 40 at 1). However, the PAWS sanctuary has only one female Asian elephant, and that elephant is under quarantine for tuberculosis. While the sanctuary anticipates that its elephant population will grow in the near future, this would happen because of "requests to take elephants from circuses and zoos." (*Id*.) This path to growth is unlikely to yield a multi-generational herd, which is important for Chai and Bamboo's well-being. Moreover, as recently as April 8, 2015, PAWS noted that it would take a "minimum of six months to complete" necessary remodeling and construction before the facility could accommodate Chai and Bamboo. (*Lawrence Decl*., Dkt. 50.)

EJP argues that, while this "sounds appealing," WPZS's own press releases indicate that Bamboo is incapable of this kind of integration. (Dkt. No. 36 at 21.) Indeed, WPZS has, in the past, acknowledged that Bamboo lacked "the skills necessary to safely play a constructive role within a herd with young calves." (*3d Tonry Decl.*, Dkt. No. 42, Ex. 8). However, the press release containing this acknowledgment is more than ten years old. In the intervening years, Bamboo gained experience with a young elephant and was able to become comfortable, and to interact safely, with that elephant. (*2nd Bohmke Decl.*, Dkt. No. 45 at ¶ 8.) Staff members of both zoos expect that Bamboo "will integrate successfully." (*Id*.) The Court hopes, but cannot know, that this assessment is correct. This shared expectation does, however, bolster the Court's confidence in its earlier finding that there is no basis for concluding that relocation to the OKC Zoo is "likely to result in any harm beyond that already incurred due to the very fact of Chai and Bamboo's existence as captive Asian elephants in the United States." (Dkt. No. 28 at 10.)

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order (Dkt. No. 36) is DENIED.

DATED this 8th day of May 2015.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE